IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF PUERTO RICO

**GILBERTO MORALES-TORRENS,**

　Plaintiff,

　v.                                                                   Civil No. 09-1413 (GAG)

**CONSORCIO DEL NORESTE, et al.,**

　Defendants.

**OPINION AND ORDER**

　　　Plaintiff, Gilberto Morales-Torrens ("Plaintiff"), commenced this action against the Consorcio del Noreste ("Consorcio") and its Executive Director Carlos Rodriguez-Rivera ("Rodriguez-Rivera") (collectively, "Defendants") in their official and personal capacities. Plaintiff brings this action pursuant to 42 U.S.C. Section 1983 alleging violations of the First, Fifth, and Fourteenth Amendment to the United States Constitution. Plaintiff also brings state claims alleging violations of Puerto Rico Law 115 of December 20, 1991, P.R. Laws Ann. tit 29, §194(a); Puerto Rico Law 45 of April 18, 1935, P.R. Laws Ann. tit 11, § 7; and Articles 1802 and 1803 of the Civil Code of Puerto Rico, P.R. Laws Ann. tit. 31, §§ 5141-5142.

　　　Presently before the court is Defendants' motion for summary judgment (Docket No. 71). Plaintiff opposed this motion (Docket No. 77). By leave of the court, Defendants filed a reply brief (Docket No. 92) which Plaintiff opposed by sur-reply (Docket No. 95). After reviewing these submissions and the pertinent law, the court **GRANTS** Defendants' motion at Docket No. 71.

**I.　　Standard of Review**

　　　Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56©; Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). "An issue is

**Civil No. 09-1413 (GAG)**                                    2

genuine if 'it may reasonably be resolved in favor of either party' at trial, and material if it 'possess[es] the capacity to sway the outcome of the litigation under the applicable law.'" Iverson v. City of Boston, 452 F.3d 94, 98 (1st Cir. 2006) (alteration in original) (citations omitted). The moving party bears the initial burden of demonstrating the lack of evidence to support the non-moving party's case. Celotex, 477 U.S. at 325. "The movant must aver an absence of evidence to support the nonmoving party's case. The burden then shifts to the nonmovant to establish the existence of at least one fact issue which is both genuine and material." Maldonado-Denis v. Castillo-Rodriguez, 23 F.3d 576, 581 (1st Cir. 1994). The nonmoving party must then "set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). If the court finds that some genuine factual issue remains, the resolution of which could affect the outcome of the case, then the court must deny summary judgment. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

When considering a motion for summary judgment, the court must view the evidence in the light most favorable to the non-moving party and give that party the benefit of any and all reasonable inferences. Id. at 255. Moreover, at the summary judgment stage, the court does not make credibility determinations or weigh the evidence. Id. Summary judgment may be appropriate, however, if the non-moving party's case rests merely upon "conclusory allegations, improbable inferences, and unsupported speculation." Forestier Fradera v. Municipality of Mayaguez, 440 F.3d 17, 21 (1st Cir. 2006) (quoting Benoit v. Technical Mfg. Corp., 331 F.3d 166, 173 (1st Cir. 2003)).

**II.      Relevant Factual & Procedural Background**

The Consorcio del Noreste is a government entity with the capacity to sue and be sued. (See Docket No. 28-2 ¶ 4.) The Consorcio receives federal funds under the Work Investment Act ("WIA") to train, provide services and mentoring programs to increase Puerto Rico's workforce. (See Docket No. 71-1 ¶ 1.) Plaintiff Morales-Torrens began working for the Consorcio on August 13, 2001 as a regular employee in the position of Assistant Counselor at the main offices of the Consorcio. (See Docket No. 71-1 ¶ 2.) During his employment and prior to January 2005, Plaintiff held various trust positions as Director and Interim Director, as well as career positions as Sub

**Civil No. 09-1413 (GAG)**                              3

Director.  (See Docket No. 71-1 ¶ 3.)  In 2003, by recommendation of New Progressive Party ("NPP") member and then Mayor of Río Grande, Hon. Emilio Rosa Pacheco, Plaintiff was appointed Director of the Local Office of Río Grande.  (See Docket No. 71-1 ¶ 4.)  The position of Director of the Local Office of Río Grande was a trust position appointment.  (See Docket No. 71-1 ¶ 5.)  As such, Plaintiff was aware that the Executive Director of the Consorcio could remove him at any point in time for any reason.  Id.  The Executive Director that appointed Plaintiff as Director was Carlos Juan Mendez, an NPP activist.  (See Docket No. 71-1 ¶ 7.)  Plaintiff held the position of Director until 2004.  (See Docket No. 71-1 ¶ 8.)

In the year 2000, Plaintiff worked in the NPP primaries as an election poll watcher for the mayoral candidacy of Mr. Emilio Rosa Pacheco.  (See Docket No. 71-1 ¶ 22.)  Plaintiff also worked as an election poll watcher for the NPP in the 2000 general elections.  (See Docket No. 71-1 ¶ 23.)  In 2004, Plaintiff worked in the advance motorcade, "avanzandas," for Carlos Juan Mendez, a NPP candidate for District 36 Representative.  (See Docket No. 71-1 ¶ 24.)  Part of his duties as a member of the avanzadas was to distribute political propaganda for the NPP.  Id.  During the avanzadas, Plaintiff spent time with Rodriguez-Rivera and other Consorcio co-workers.  (See Docket No. 71-1 ¶ 25.)  Plaintiff worked as a poll watcher for gubernatorial candidate Luis Fortuño in the 2008 NPP primaries.  (See Docket No. 71-1 ¶ 26.)  Plaintiff voted in these primaries.  Id.

Co-defendant Rodriguez-Rivera became the Executive Director of the Consorcio in January 2005.  (See Docket No. 71-1 ¶ 9.)  Between February and March of that year, Rodriguez-Rivera interviewed and appointed Plaintiff to the trust position of Director of Participant Services.  Id.  On October 24, 2007, Plaintiff was notified by the Director of Human Resources, Mrs. Ivette Fuentes, that he had been transferred from his trust position to a career position.  (See Docket No. 71-1 ¶ 19; see also Docket No. 71-2 at 27, l. 21-25).  Plaintiff subsequently filed complaints against Defendants in Puerto Rico Court of First Instance and in the United States District Court for the District of Puerto Rico on October 31, 2008 and May 7, 2009, respectively.  (See Docket Nos. 88-14, 1.)

On May 18, 2009, Rodriguez-Rivera notified Plaintiff by letter of disciplinary proceedings

**Civil No. 09-1413 (GAG)**                               4

against him and the intention of termination. (See Docket Nos. 71-20; 28-2 ¶ 26(f)). On June 3, 2009, Plaintiff received a second letter notifying him of his dismissal. (See Docket No. 77-13.) Plaintiff was notified through a third letter, dated June 11th, 2009 that he had been reinstated in his position while an informal hearing took place. (See Docket No. 77-14.) Following an administrative hearing, Plaintiff was notified of his ultimate dismissal from the Consorcio. (See Docket No. 71-21.)

**III.   Legal Analysis**

   **A.   Section 1983 Claim**

Plaintiffs bring claims under 42 U.S.C. Section 1983 alleging violations of the First, Fifth and Fourteenth Amendments to the United States Constitution. Section 1983 creates a remedy for those who are deprived of the rights, privileges, or immunities granted to them by the Constitution or laws of the United States. See Rodriguez Garcia v. Municipality of Caguas, 354 F.3d 91, 99 (1st Cir. 2004) (citing Baker v. McCollan, 443 U.S. 137, 144 n. 3, (1979). To succeed on a Section 1983 claim, plaintiffs must prove that someone has deprived them of a right protected by the Constitution or the laws of the United States and the perpetrator acted under color of state law. Cruz-Erazo v. Rivera-Montañez, 212 F.3d 617, 621 (1st Cir. 2000).

   **1.   First Amendment Political Discrimination**

The First Amendment protects non policymaking public employees from adverse employment actions based on their political opinion. See Rutan v. Republican Party of Ill., 497 U.S. 62, 75-76 (1990); Padilla-Garcia v. Guillermo Rodriguez, 212 F. 3d 69, 74 (1st Cir. 2000). A *prima facie* case of political discrimination requires evidence that (1) the plaintiff and the defendant belong to opposing political affiliations; (2) the defendant has knowledge of the plaintiff's opposing political affiliation; (3) a challenged employment action occurred; and (4) political affiliation was a substantial or motivating factor behind the challenged employment action. See Martinez-Velez v. Rey-Hernandez, 506 F.3d 32, 39 (1st Cir. 2007); Peguero-Moronta v. Santiago, 464 F.3d 29, 48 (1st Cir. 2006). Plaintiff "must point 'to evidence on the record which, if credited, would permit a

**Civil No. 09-1413 (GAG)**                5

rational fact finder to conclude that the challenged personnel action occurred and stemmed from a politically based discriminatory animus.'" Gonzalez-de-Blasini v. Family Dept., 377 F.3d 81, 85 (1st Cir. 2004) (quoting LaRou v. Ridlon, 98 F.3d 659, 661 (1st Cir. 1996)). Additionally, the plaintiff "must make a fact-specific showing that a causal connection exists between the adverse treatment and the plaintiff's political affiliation." Aviles-Martinez v. Monroig, 963 F.2d 2, 5 (1st Cir. 1992) (citing Correa-Martinez v. Arrillaga-Belendez, 903 F.2d 49, 58 (1st Cir. 1990)).

If the plaintiff proves his *prima facie* case, the burden shifts to the defendant to articulate a nondiscriminatory ground for the adverse employment action and establish, by a preponderance of the evidence, that the same action would have been taken regardless of the plaintiff's political beliefs ("Mt. Healthy Defense"). Mt. Healthy City School Dist. Bd. of Educ. v. Doyle, 429 U.S. 274, 287 (1977). In response, "the plaintiff may discredit the proffered nondiscriminatory reason, either circumstantially or directly, by adducing evidence that discrimination was more likely than not a motivating factor." Padilla-Garcia, 212 F.3d at 77 (internal citations omitted). In the end, "[s]ummary judgment is warranted 'only if defendants' evidentiary proffer compelled the finding that political discrimination did not constitute a 'but for' cause for the adverse employment action.'" Mendez-Aponte v. Puerto Rico, 656 F. Supp. 2d 277, 285 (D.P.R. 2009) (quoting Jirau-Bernal v. Agrait, 37 F.3d 1, 4 (1st Cir. 1994)).

In their motion for summary judgment, Defendants contend that Plaintiff has failed to establish a *prima facie* case of political discrimination. (See Docket No. 71 at 2.) They argue that Plaintiff's claim for political discrimination is not supported by the facts. (See Docket No. 71 at 5 ¶ 2.) Specifically, Defendants aver that Plaintiff has failed as to the first and second element of a *prima facie* political discrimination claim. Id.

With respect to the first element of a *prima facie* political discrimination claim, Defendants argue that Plaintiff and Defendants do not belong to opposing political affiliations. They claim that "Plaintiff was a well known member of [the NPP,] the same party of the nominating authority and co-defendant . . . Rodriguez-Rivera." (See Docket No. 71 at 5 ¶ 2.) Plaintiff alleges that he was politically discriminated against because he supported the PDP Mayor of Rio Grande. (See Docket

**Civil No. 09-1413 (GAG)**                                    6

No. 77 at 2.) Without any evidence or allegation that Plaintiff belonged to an opposing political affiliation, a reasonable fact-finder could not conclude that Plaintiff met his burden of establishing a *prima facie* case of political discrimination.[1] See Pica-Hernandez v. Irizarry Pagan, 671 F. Supp. 2d 289, 296 (D.P.R. 2009).

Even assuming that Plaintiff was able to meet the first prong of a *prima facie* case, he would not fare better on the second prong. The second prong of a *prima facie* case of political discrimination requires Plaintiff to show that Defendants had knowledge of his opposing political affiliation. Plaintiff attempts to establish this through the submission of deposition testimony. In his deposition (Docket No. 71-4), Plaintiff contends that he "had repeatedly told [Rodriguez-Rivera] . . . how well the Major [sic] of Río Grande was doing . . . and [that] [the mayor] was a member of the [PDP]." (See Docket No. 71-4 at 4.)

The First Circuit has established that knowledge of political affiliation cannot be based on "testimony of having been seen, or . . . met during routine campaign activity participation, having been visited by the now incumbent defendant while said defendant was a candidate to the position he now holds, by having held a trust/confidential/policymaking position in the outgoing administration, by having political propaganda adhered to plaintiff's car and/or house, or through the knowledge of third parties." Roman v. Delgado-Altieri, 390 F. Supp. 2d 94, 103 (D.P.R. 2005).

After examining the arguments and evidence, the court finds that Plaintiff has failed to present sufficient evidence, which would permit a reasonable jury to conclude that Defendants were aware of his opposing political affiliation. Morever, throughout his employment with the Consorcio, the record shows that Plaintiff was identified by Defendants as a member of the NPP, and not the PDP. Plaintiff was appointed to the trust position of Director of the Local Office of Río Grande by recommendation of an NPP mayor. (See Docket No. 71-1 ¶¶ 4-5.) The Executive Director that appointed him was an NPP activist. (See Docket No. 71-1 ¶ 8.) In 2000, Plaintiff worked as an

---

[1] The court notes that Plaintiff's Complaint (Docket No. 1) and Amended Complaint (Docket No. 28-2) contain no allegation of Plaintiff's political affiliation.

**Civil No. 09-1413 (GAG)**                              7

election poll watcher in the NPP mayoral primaries of Río Grande. (See Docket No. 71-1 ¶ 22.) That same year, he worked as an election poll watcher for the NPP in the general elections. (See Docket No. 71-1 ¶ 23.) In 2004, Plaintiff worked in the avanzadas for a NPP candidate and distributed political propaganda for the NPP as part of his duties. (See Docket No. 71-1 ¶¶ 24.) During his time as part of the avanzadas, Plaintiff spent time with co-defendant Rodriguez-Rivera and other Consorcio co-workers.[2] (See Docket No. 71-1 ¶ 25.) Plaintiff also worked as a poll watcher for gubernatorial candidate Luis Fortuño and voted in the 2008 NPP primaries. (See Docket No. 71-1 ¶ 26.) Plaintiff admitted he was a member of the NPP at the end of the year 2007 and the beginning of 2008. (See Docket No. 71-1 ¶ 27.) Based on this evidence a reasonable fact finder could not conclude that Defendants had knowledge of Plaintiff's PDP affiliation. "A prima facie case is not made out when there is no evidence that an actor was even aware of the plaintiff's political affiliation." Hatfield-Bermudez v. Aldanondo-Rivera, 496 F. 3d 51, 61 (1st Cir. 2007). Thus, Plaintiff fails to establish the second prong of the *prima facie* case of political discrimination for purposes of this motion.

Because Plaintiff has failed to present sufficient evidence demonstrating that he and Defendants were from opposing political affiliations, moreover that Defendants were aware of Plaintiff's political affiliation, the court cannot find that Plaintiff's evidence establishes a *prima facie* case of political discrimination under the First Amendment. Accordingly, Defendants are entitled to summary judgment on Plaintiff's First Amendment Section 1983 claims for political discrimination. The court **GRANTS** Defendants' motion on these grounds and hereby **DISMISSES** Plaintiff's First Amendment claims.

       **2.**      **First Amendment Retaliation claim**

Plaintiff claims that Defendants retaliated against him for his testimony "in hearings before an investigative body" and for filing complaints before the Puerto Rico Court of First Instance and

---

[2] Defendants' exhibit 15 contains several photographs of Plaintiff in an NPP activity with former NPP Governor Pedro Rosselló and co-defendant Rodriguez-Rivera. (See Docket No. 71-16.)

**Civil No. 09-1413 (GAG)**                                          8

the U.S. District Court by "definitely discharg[ing] [him] from his position." (See Docket No. 28-2 at 7 ¶¶ 27-28.) In doing so, Plaintiff alleges, Defendants violated the First Amendment. In <u>Mt. Healthy City School District Board of Education v. Doyle</u>, the Supreme Court established that to prevail on a free speech claim, "a plaintiff must show that he engaged in constitutionally protected conduct and that this conduct was a substantial or motivating factor in the alleged adverse employment action." <u>Welch v. Ciampa</u>, 542 F.3d 927, 936 (1st Cir. 2008) (citing <u>Mt. Healthy City Sch. Dist. Bd. of Educ.</u>, 429 U.S. at 287). "If the plaintiff meets his *prima facie* burden, the defendant can prevail if it can establish that it would have taken the same action regardless of the plaintiff's . . . protected conduct." <u>Id.</u> (citing <u>Padilla-Garcia</u>, 212 F.3d at 74.) The court will first address whether the alleged retaliation provides a basis for a Section 1983 claim.

To establish a First Amendment violation, a public employee must demonstrate that he or she has suffered an adverse employment action for exercising her right to free speech. <u>See Gagliardi v. Sullivan</u>, 513 F.3d 301, 306 (1st Cir. 2008). A discharge, a demotion, or a failure to promote are employment actions which have an adverse impact on the employee. <u>See Welsh v. Derwinski</u>, 14 F.3d 85, 86 (1st Cir. 1994) (citing <u>Connell v. Bank of Boston</u>, 924 F.2d 1169, 1179 (1st Cir. 1994)). Accordingly, Plaintiff's termination constitutes an adverse employment action sufficient to support a Section 1983 claim. The court now addresses whether Plaintiff adduced sufficient evidence in support of his claim to survive summary judgment.

Public employees do not forfeit their First Amendment rights to speak on matters of public concern simply because they are public employees. <u>Curran v. Cousins</u>, 509 F.3d 36, 44 (1st Cir. 2007). "[T]he First Amendment protects a public employee's right, in certain circumstances, to speak as a citizen addressing matters of public concern." <u>Garcetti v. Ceballos</u>, 547 U.S. 410, 417 (2006). A determination must be made to ensure that the conduct at issue falls within the ambit of the First Amendment. A public employee alleging that his employer has violated his First Amendment right to free speech must satisfy a three-part test. <u>See Welch</u>, 542 F.3d at 938. First, the plaintiff must establish that he spoke as a citizen on a matter of public concern. <u>Id.</u> (citing <u>Davignon v. Hodgson</u>, 524 F.3d 91, 100 (1st Cir. 2008)). Then he must show that balanced against

**Civil No. 09-1413 (GAG)**                                                                 9

each other, the plaintiff's and the public's First Amendment interests outweigh the government's interest in functioning efficiently. See Jordan v. Carter, 428 F.3d 67, 72 (1st Cir. 2005). Finally, the plaintiff must show that the protected speech was a substantial or motivating factor in the adverse employment action against him. Id.

To establish whether Plaintiff's speech is protected by the First Amendment, the court must determine whether Plaintiff was both "speaking as a citizen" and "speaking on a matter of public concern." Foley v. Town of Randolph, 598 F.3d 1, 5 (1st Cir. 2010). "If the answer to either of these sub-parts is no, then he has no First Amendment claim based on the Defendants' action in relation to his speech. Id. (citing Garcetti, 547 U.S. at 418).

Plaintiff was summoned to give testimony in an investigation being conducted by the Executive Director of the Development Council, an organism that oversees the WIA administering Consorcios, on suspected irregularities. (See Docket No. 28-2 ¶ 23.) According to Plaintiff he "testified as a citizen regarding illegal acts that [Rodriguez-Rivera] was making at the "Consorcio" and verbalized some situations about things he understood were irregular that could affects [sic] the WIA funds." (See Docket No. 77-1 ¶ 43.) Defendants contend that "[b]ecause Plaintiff was summoned to give that testimony within the purview of his position, he was not speaking as a citizen . . . but rather as an employee fulfilling the duties of his position." (See Docket No. 71 at 20.) An employee's speech retains some possibility of First Amendment protection when it is "the kind of activity engaged in by citizens who do not work for the government." Id. at 6 (citing Garcetti, 547 U.S. at 423).

Plaintiff has failed to establish that he was speaking as a citizen when he gave his testimony in the investigation on irregularities under Rodriguez-Rivera's administration of the Consorcio. (See Docket No. 28-2 ¶ 23.) Plaintiff admits that he never presented a complaint with the Development Council. (See Docket No. 71-1 ¶ 71.) He admits that he appeared before the Development Council because he was summoned to give testimony in an investigation. Id.   Plaintiff admits he did not know what the investigation was about. (See Docket No. 77-1 ¶ 75.)

The court finds that because Plaintiff was summoned to give testimony as an employee of

**Civil No. 09-1413 (GAG)**                                      10

the Consorcio under the administration of Rodriguez-Rivera rather than a private citizen, this was not protected speech in the context of the First Amendment.

With regards to Plaintiff's commonwealth court complaint (Docket No. 88-14) and the original District Court complaint (Docket No. 1), the court's conclusion is the same. As earlier noted by the court, for speech to be protected under the First Amendment, plaintiff must have: (1) spoken as a citizen (2) on a matter of public concern. See Welch, 542 F.3d at 938. As both of these elements are necessary, see Foley, 598 F.3d at 5, failure to establish one is dispositive of the issue. Therefore, the court will address whether Plaintiff's speech touched upon matters of public concern.

Whether an employee's speech addresses a matter of public concern must be determined by the content, form, and context of a given statement, as revealed by the whole record." Rosado Quiñones v. Toledo, 528 F.3d 1, 5 (quoting Connick v. Myers, 461 U.S. 138, 147-148 (1983)). "That determination may require an inquiry into the employee's motive for the speech." Mullin v. Town of Fairhaven, 284 F.3d 31, 38 (1st Cir. 2002).

Plaintiff contends that his complaints denounce "the illegal participation of unqualified persons based upon political affiliation in federally funded programs and the illegal use of government property." (See Docket No. 77 at 14.) Plaintiff claims that "[t]he proper use and expenditure of federal funds and property is a matter of public concern." Id. Defendants contend that if "Plaintiff's allegations can be deemed 'speech' in light of the First Amendment . . . Plaintiff spoke on issues related to the operation of the office while he was a trust employee . . . and therefore is not entitled to First Amendment protection." (See Docket No. 71 at 20.)

Plaintiff's commonwealth court complaint (Docket No. 88-14) and the original District Court complaint before the District Court (Docket No. 1) include the same claims.[3] The complaints are charged with implications of personal animosity towards him by Consorcio personnel, but they do not touch upon matters of inherent public concern in the context of providing services such as

---

[3] Plaintiff attests to this in his opposition to motion for summary judgment (see Docket No. 77-1 ¶ 49) and the court has examined both complaints.

**Civil No. 09-1413 (GAG)**                    11

administering WIA funds. Plaintiff's claims of political discrimination and retaliation do not implicate the ability of Consorcio personnel to carry out their responsibility to the public. See Rosado Quiñones, 528 F.3d at 5. The Supreme Court held that:

> [W]hen a public employee speaks not as a citizen upon matters of public concern, but instead as an employee upon matters only of personal interest, absent the most unusual circumstances, a federal court is not the appropriate forum in which to review the wisdom of a personnel decision taken by a public agency allegedly in reaction to the employee's behavior.

Connick, 461 U.S. at 147. Plainly, "there is no absolute First Amendment right to file lawsuits." Rosado-Quiñones, 528 F.3d at 7 (citing Bill Johnson's Rests., Inc. v. NLRB, 461 U.S. 731, 743 (1983)). The First Circuit has found that a complaint alleging harassment by fellow employees and a delay in the rearmament of a law enforcement officer was a "a classic example of speech concerning internal working conditions affecting only the speaker and co-workers." Rosado Quiñones, 528 F.3d at 5.

In the present case, Plaintiff's complaints do not constitute speech on a matter of public concern, and as such, he has not demonstrated a First Amendment free speech challenge. See Rosado-Quiñones, 528 F.3d 1 (affirming that the content of a police officer's speech, in filing a complaint, was not a matter of public concern, as required for allegedly retaliatory transfer to violate officer's First Amendment rights).

Consequently, the court **GRANTS** Defendants' motion for summary judgment as to Plaintiff's retaliation claims. The Section 1983 claims asserted against Consorcio del Noreste and Rodriguez-Rivera based on Plaintiff's First Amendment rights must be **DISMISSED**.

        **3.    Fifth Amendment Claims**

The Due Process Clause of the Fifth Amendment provides that "[n]o personal shall . . . be deprived of life, liberty, or property, without due process of law . . . ." U.S. Const. amend. V. The Fifth Amendment, however, applies only to actions of the federal government, not to actions of state or local governments. Martinez-Rivera v. Sanchez-Ramos, 498 F.3d 3, 8 (1st Cir. 2007).

Plaintiff brings due process claims under the Fifth Amendment to the U.S. Constitution. Defendants request that summary judgment be granted on said claims because the Fifth Amendment

**Civil No. 09-1413 (GAG)**  12

applies only to the actions of the federal government and Plaintiff's claims do not relate to the federal government. (See Docket No. 71 at 22-23.)

In the actual case, Plaintiff's complaint is brought against state and not federal actors. Plaintiff has failed to establish a Fifth Amendment claim. Accordingly, the court **GRANTS** Defendants' motion for summary judgment on Plaintiff's Fifth Amendment claim.

### 4. Fourteenth Amendment Due Process Claims

The Due Process Clause of the Fourteenth Amendment provides that "[n]o State shall . . . deprive any person of life, liberty, or property, without due process of law . . . ." U.S. Const. amend. XIV. This due process guarantee has both procedural and substantive aspects. See Parker v. Hurley, 514 F.3d 87, 101 (1st Cir. 2008). Plaintiffs bring claims under both the procedural and substantive due process requirements of the Fourteenth Amendment.

#### a. Procedural Due Process

To succeed on a procedural due process claim, Plaintiff must show that he was deprived of a life, liberty, or property interest without the requisite minimum measure of procedural protection warranted under the circumstances. See Romero-Barcelo v. Hernandez-Agosto, 75 F.3d 23, 32 (1st Cir. 1996). Plaintiff argues that his procedural due process rights were violated because he was deprived of the enjoyment of his employment as Director of Participant Services and later deprived of his property interest when he was dismissed from his career position by Defendant. (See Docket No. 28-1 at 1.)

A viable procedural due process claim must demonstrate a "deprivation by state action of a constitutionally protected interest in 'life, liberty, or property' . . . without due process of law." Hernandez-Agosto, 75 F.3d at 32 (citations omitted). "The Due Process Clause of the Fourteenth Amendment protects government employees who possess property interests in continued public employment." Ruiz-Casillas v. Camacho-Morales, 415 F.3d 127, 134 (1st Cir. 2005) (citing Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 541 (1985)). To determine whether public employees possess such a property right, the First Circuit requires that the court examine local law and the terms and conditions of the employment arrangement. Id.

**Civil No. 09-1413 (GAG)**  13

Puerto Rico law recognizes two categories of public employees: confidential or trust employees and career employees. P.R. Laws Ann. tit. 3, § 1465; see also Morales-Santiago v. Hernandez-Perez, 488 F.3d 465, 469 (1st Cir. 2007). Under Puerto Rico law, trust employees are "selected and removed at will." P.R. Laws Ann. tit. 3, §1465. "[T]he holder of a trust position does not have a constitutionally protected property interest in that position." Galloza v. Foy, 389 F.3d 26, 34 (1st Cir. 2004) (citing Ruiz-Roche v. Lausell, 848 F.2d 5, 7 (1st Cir.1988)). However, an employee with regular status in the career service who moves to a trust position, shall have the absolute right to be reinstated in a position equal or similar to the last job they held within the career service. P.R. Laws Ann. tit. 3, § 1465(a).

It is not disputed in the present case that Plaintiff's position as Director of Participant Services was a "trust position." (See Docket No. 28-2 ¶ 8; see also Docket No. 71 at 27.) Having no property right to continued employment in his position as a trust employee, Plaintiff is not entitled to constitutional due process in the termination of his trust position.

Career employees, on the other hand, do have a property interest in their continued employment under Puerto Rico law. Garnier v. Rodriguez, 506 F.3d 22, 27 (1st Cir. 2007) (citing Gonzalez-de-Blasini, 377 F.3d at 86). Due process requires that prior to a deprivation of life, liberty, or property the individual being deprived of said interest be given notice and an opportunity for a hearing. See Herwins v. City of Revere, 163 F.3d 15, 18 (1st Cir. 1998) (citing Memphis Light, Gas and Water Div. v. Craft, 436 U.S. 1, 19 (1978)). The "root requirement" is that an individual be given an opportunity to be heard before he is deprived of any significant property interest. See Loudermill, 470 U.S. at 542 (quoting Boddie v. Connecticut, 401 U.S. 371, 379 (1971))

As it is undisputed that Plaintiff has a property interest in his career position, the court addresses whether he received constitutionally adequate process in terminating his employment. "Due process requires only that the pre-termination hearing fulfill the purpose of 'an initial check against mistaken decisions–essentially, a determination of whether there are reasonable grounds to believe that the charges against the employee are true and support the proposed action." Marrero-Gutierrez v. Molina, 491 F.3d 1, 8 (2007) (quoting Cepero-Rivera v. Fagundo, 414 F.3d 124, 135

**Civil No. 09-1413 (GAG)**                                14

(1st Cir. 2005)). "This initial check requires the employee to receive notice of the charges, an explanation of the evidence that supports those charges, and the ability to refute that evidence." Id. "Any standard that would require more process than this would unduly impede the government in removing poorly performing employees." Id.

Plaintiff concedes in his amended complaint that on May 18, 2009, he received a letter informing him of the Consorcio's intention to remove him from his position. The record shows that on May 18, 2009, Plaintiff was notified by letter of disciplinary proceedings and intention of termination. (See Docket No. 71-20; see also Docket No. 28-2 ¶ 26(f)). The letter informed Plaintiff of the charges against him, mainly that he had violated the Consortium's Code of Ethics and Law No. 12 of July 24, 1985, the evidence they had against him, and his "right to request an [i]nformal [a]dminstrative [h]earing before an examining officer within 15 days." (See Docket No. 71-20.) The letter advised Plaintiff that he waived his right to a pre-termination hearing if he did not request one within that time period. Id.

On June 3, 2009, Plaintiff was notified of his dismissal. As grounds, Rodriguez-Rivera cited the fact that the 15 day period to request an informal hearing had expired and the Consorcio understood his silence to be a waiver of the informal hearing. (See Docket No. 77-13.) In another letter addressed to Plaintiff on June 11th, 2009, Rodriguez-Rivera explains that notwithstanding the June 3rd letter, the Consorcio received a request for an informal hearing on June 5, 2009 through a letter dated June 1, 2009.[4] (See Docket No. 77-14.) In light of this, the Consorcio "decided to grant [Plaintiff] the opportunity to present [his] version of the facts regarding the charges mentioned" in the May 18th letter and reinstated Plaintiff to his position until the process of informal hearings concluded and a final decision was made. (See Docket No. 77-14.)

An administrative hearing was held on June 18, 2009 and a resolution was issued by an

---

[4] The letter requesting an informal hearing was addressed June 1, 2009, a day prior to the expiration of the 15 day period, but was received by the Consorcio on June 5, 2009. (See Docket No. 77-14.)

**Civil No. 09-1413 (GAG)**                                    15

examining officer. (See Docket No. 71-1 ¶ 51.) Plaintiff was represented by counsel in said hearing. Id. After receiving and analyzing the report by the examining officer that presided over the hearing, Rodriguez-Rivera notified Plaintiff of his termination through a letter. Id. The letter, dated July 1, 2009, informed Plaintiff of the reasons for his dismissal, including the norms and regulations he was found to be in violation of, and of his right to appeal this decision within 30 days. (See Docket No. 71-21.)

In the instant case, Plaintiff was provided with notice of the charges brought against him when he received the May 18th letter from Defendant Rodriguez-Rivera. (See Docket No. 71-20.) The letter also informed him of his right to request an informal hearing. Id. Plaintiff requested and was afforded an informal hearing. (See Docket No. 71-1 ¶ 51.) The record shows that the process provided to Plaintiff was sufficient. See Calderon-Garnier v. Rodriguez, 578 F.3d 33 (1st Cir. 2009) (finding that presenting the employee with notice of the charges and offering an informal hearing once requested was sufficient). Therefore, the court finds that Plaintiff was provided with sufficient process before terminating his employment.

In summary, the court finds that Plaintiff had a property interest in his career employment. Notwithstanding Plaintiff's property interest, he was given sufficient process in the termination of his career position. Accordingly, the court **GRANTS** Defendants' motion for summary judgment and **DISMISSES** Plaintiff's claim under the Due Process Clause.

### b.     Substantive Due Process

Defendants move for the dismissal of Plaintiff's substantive due process claim on grounds that Plaintiff cannot seek relief under substantive due process because he seeks relief of a First Amendment violation. (See Docket No. 71 at 23.) "Substantive due process is an inappropriate avenue of relief when the governmental conduct at issue is covered by a specific constitutional provision." Pagan v. Calderon, 448 F.3d 16, 33 (1st Cir. 2006). "It is the first Amendment, not the Fourteenth Amendment, that guards individuals against state-sponsored acts of political discrimination or retaliation." Id. at 33-34.

Plaintiff's substantive due process claims relate to his First Amendment political

**Civil No. 09-1413 (GAG)**                        16

discrimination and retaliation claims. Because Plaintiff seeks relief pursuant to Section 1983 for a First Amendment violation, he may not also seek relief under the more "scarce and open ended" "guideposts" of substantive due process." Collins v. Harker Heights, 503 U.S. 115, 125 (1992). Therefore, the court **DISMISSES** Plaintiff's substantive due process claim.

    **B.**    **State Law Claims**

"As a general principle, the unfavorable disposition of a plaintiff's federal claims at the early stages of a suit, well before the commencement of trial, will trigger the dismissal without prejudice of any supplemental state-law claims." Rodriguez v. Doral Mortg. Corp., 57 F.3d 1168, 1177 (1st Cir. 1995). In cases where the federal claims are dismissed, "the balance of factors to be considered under the pendent jurisdiction doctrine – judicial economy, convenience, fairness, and comity– will point toward declining to exercise jurisdiction over the remaining state-law claims." Id. The use of supplemental jurisdiction in these circumstances is completely discretionary, and is determined on a case-by-case basis. Id.

    As all of the federal claims by Plaintiff have been dismissed, the court, in its discretion, **DISMISSES**, without prejudice, all state law claims brought by Plaintiff.

**IV.**    **Conclusion**

For the foregoing reasons, the court **GRANTS** Defendants' motion for summary judgment at Docket No. 71 and **DISMISSES** all claims before this court.

**SO ORDERED**

In San Juan, Puerto Rico this 15th day of December, 2010.

*S/Gustavo A. Gelpí*

GUSTAVO A. GELPÍ

United States District Judge